UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 06-458-GWU

CHRISTY RUSSELL, PLAINTIFF,

VS.   **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of her application for Supplemental Security Income (SSI). The appeal is currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

1

4.  Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5.  Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.  Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

7.  Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1)

> whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

06-458 Russell

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency

may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Christy Russell, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of a history of probable benign vertigo and polio affecting the left side, notably the left upper extremity. (Tr. 16). Nevertheless, based in part on the testimony of a Vocational Expert (VE), the ALJ determined that Mrs. Russell retained the residual functional capacity to perform a significant number of jobs existing in the economy, and therefore was not entitled to benefits. (Tr. 18-21). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ asked the VE whether a person of the plaintiff's age, marginal literacy, and lack of work experience could perform any jobs if she were limited to lifting, carrying, pushing, and pulling no more than 20 pounds occasionally with her left arm, and also had the following non-exertional impairments. (Tr. 182-3). She: (1) was precluded from climbing ladders, ropes, or scaffolds or any exposure to hazards; (2) could occasionally climb ramps or stairs; and (3) could

operate hand controls on an occasional basis with her left hand. (Tr. 182-3). The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the state and national economies. (Tr. 183-4).

On appeal, this court must determine whether the administrative decision is supported by substantial evidence.

The plaintiff alleged disability primarily due to seizures which caused her to "black out." (Tr. 77). At the hearing, she also described a history of childhood polio, which caused her left arm to be chronically weak. (Tr. 166). Other problems included a limited reading ability (Tr. 148-9), headaches, poor memory, nervousness in crowds, and an inability to drive because she was "scared." (Tr. 148-9, 166-70). Mrs. Russell's testimony regarding her seizures/blackout spells was somewhat contradictory, at one point saying that they had only happened a total of four to five times, but then saying that she had them almost every day. (Tr. 160-1). She initially indicated that no one other than her husband and mother-in-law had witnessed the spells, but then said they had happened twice when she was shopping. (Tr. 163). She did not know when they had started. (Tr. 158). She had seen a doctor named Cheryl Polk about the problem several years earlier when she had a medical card, but the physician found nothing wrong. (Tr. 154-5). Despite her seizures and left arm weakness, Mrs. Russell testified that she had to wait on her husband who was

disabled and could not put his own shoes and socks on, and also did cooking, laundry, and housework. (Tr. 152-3). Despite her reading and learning difficulties, she testified that she would sell items in the Trading Post newspaper to get money. (Tr. 153).

Barbara Russell, the plaintiff's mother-in-law, testified at the hearing that she had personally witnessed three seizures, which had involved yelling, drooling, and jerking, but these had lasted a maximum of three minutes, although it took Christy a couple of hours to get over them. (Tr. 175-6). She thought the first seizure had been in 2003, with the next early in 2005, and the third in late fall, 2005, a couple of months before the January 5, 2006 hearing. (Tr. 177-8). However, her husband and daughter were reporting up to five seizures a day. (Tr. 179). Barbara Russell also stated that the plaintiff's problems with control of her left side also involved the left leg, and she became tired easily. (Tr. 180-1). She was nervous about any change in her routine, and it was difficult to get her to go anywhere. (Tr. 181).

Medical records from the Wayne County Health Department include a note dated July 13, 2004 at which the plaintiff mentioned having numbness in her left side, and feelings of blacking out, and the provider listed an impression of questionable seizure activity. (Tr. 85). However, the plaintiff testified that the Health Department only gave her mammograms and Pap smears, and had not conducted any investigation into her other complaints. (Tr. 155).

06-458 Russell

Dr. Tony Mancuso conducted a consultative examination of the plaintiff on October 10, 2004. Mrs. Russell reported seizure-like activities for the previous five to six years, happening six to seven times a month. (Tr. 94). She described a history of polio as a child, with loss of balance and limb weakness. (Tr. 95, 98). Dr. Mancuso's examination showed an antalgic gait and a grip strength of 58 on the right and 20 on the left. (Tr. 95).[1] Otherwise, there were no abnormalities, and Dr. Mancuso described the grip strength as "normal" in another part of his report. (Tr. 96). His impression was "possible seizures," which could be related to either "absence seizures" or transient ischemic attacks. (Tr. 98). Dr. Mancuso indicated that the plaintiff needed a neurological evaluation by a neurologist along with possible imaging of blood vessels in her head. (Id.). Despite her antalgic gait, there was no evidence of muscle atrophy or leg weakness, or decreased range of motion, so he placed no physical restrictions on the plaintiff. (Id.).

A state agency physician, Dr. James Ross, completed a functional capacity assessment on November 4, 2004, stating that the plaintiff had a negative neurological examination, and was not taking medication because of finances. (Tr. 108). He declared the condition to be "less than severe pending treatment." Another state agency physician, Dr. P. Saranga, completed an assessment on January 4, 2005, finding no exertional restrictions, but due to her possible seizures

---

[1] The unit of measurement was not specified.

06-458 Russell

with blackout episodes, concluded that she should never climb ladders, ropes, or scaffolds, should avoid all exposure to hazards such as machinery and heights, and could occasionally climb ramps and stairs. (Tr. 100-6). Dr. Saranga's functional restrictions were included in the hypothetical question.

Shortly after the administrative hearing, the plaintiff submitted office notes from unnamed physicians at Monticello Medical Associates dated between December 11, 2002 and April 29, 2003. (Tr. 112).[2] The initial office note was for a complaint of episodes of lightheadedness, but there were no abnormalities on examination and the physician assessed "questionable menopause, dizziness, and fatigue." (Tr. 120). Six days later, the plaintiff reported feeling better (Id.), but reported a "spell" occurring on December 18 when she was bent over while cleaning a room and had a "funny feeling in her head." (Tr. 119). There was no loss of consciousness or blurred vision, and the examination was still normal. (Id.). Episodes of more "funny feelings" lasting for only a second were reported in February, 2003 and the plaintiff admitted that she had "lots on her mind," and had been sleeping poorly. The physician diagnosed anxiety/depression and prescribed a medication. (Id.). Eventually, another medication, Clonidine, was prescribed for what were now being called "hot flashes," with significant improvement. (Tr. 116-17). The plaintiff's complaints of dizzy spells in April, 2003, along with nasal congestion

---

[2]Some of the notes bear initials which could be Cheryl Polk's.

and sneezing, were related to probable benign vertigo and allergies. (Tr. 115). Her feelings of anxiety and nervousness improved on the medication Zoloft. (Tr. 113). Her complaints of left shoulder pain had improved on medication and were said to be "completely resolved" with the use of Tylenol. (Tr. 116-18). There were no visits after April, 2003, apparently because Mrs. Russell lost her medical card. (Tr. 113). No functional restrictions are suggested.

Since the hypothetical question was even more restrictive than the limitation given by Dr. Saranga, who was the only source to suggest specific physical restrictions, substantial evidence supported the ALJ's decision.

On appeal, the plaintiff makes several arguments, some of which are related to evidence submitted to the Appeals Council. Evidence submitted to the Appeals Council cannot be considered as part of the court's determination of whether substantial evidence supports the Commissioner's findings, but may be reviewed solely to determine whether a remand is warranted under Sentence Six of 42 U.S.C. Section 405(g). In order to obtain a remand, the new evidence must be both new and material, and the plaintiff must demonstrate good cause for failing to incorporate it into the prior proceeding. <u>Hollon ex rel. Hollon v. Commissioner of Social Security</u>, 447 F.3d 477, 483 (6th Cir. 2006).

The evidence submitted to the Appeals Council shows that the plaintiff was seen by Dr. P.D. Patel, apparently a neurologist, on referral from a physician she

06-458 Russell

had seen for the first time on February 9, 2006 (Tr. 139), fifteen days before the ALJ issued his decision. Dr. Patel's examination took place on February 21, 2006, three days before the ALJ issued his decision. (Tr. 133). Mrs. Russell's husband told Dr. Patel that she had been having spells off and on "for the last few months." (Tr. 133). She did not have any tonic/clonic seizure activity but would become stiff and lose consciousness. She also reported a childhood history of polio, and claimed that she would only sweat on one side. (Id.). Dr. Patel's examination was normal, including her gait and station (in contrast to Dr. Mancuso's finding of an antalgic gait), although he noted that her affect was somewhat constricted and her mood was mildly dysphoric. (Tr. 134). His impression was "partial complex seizures" and depression. (Id.). Dr. Patel then obtained some objective testing, which included blood work showing no abnormalities, and a normal electroencephalogram (Tr. 127-31), but an MRI of the brain showed findings consistent with right mesial temporal sclerosis. (Tr. 132). On follow-up, in a note dated March 21, 2006, Dr. Patel reviewed a seizure diary which reflected several spells involving the loss of consciousness followed by a brief period of confusion. (Tr. 126). Dr. Patel prescribed the anti-seizure medication Trileptal and informed the plaintiff that if her symptoms persisted she should be evaluated at a "tertiary medical center." (Id.). Finally, there is an office note by a source whose name is unclear but written on Dr. Patel's stationery dated April 18, 2006, that states the plaintiff reduced her medication because it was too

strong. The diagnosis continued to be partial complex seizures and depression. (Tr. 125).

While some of the evidence submitted to the Appeals Council was "new" in that it was not in existence or available to the plaintiff at the time of the administrative proceeding, it is of questionable materiality because there is little probability that the Commissioner would have reached a different disposition of Mrs. Russell's disability claim if presented with the new evidence. Id. at 484. The new evidence does suggest a possible medical basis for the plaintiff's "spells," but there is no indication of any functional restrictions greater than adopted by the ALJ. The mere diagnosis of a condition does not establish disability. See Young v. Commissioner of Health and Human Services, 925 F.2d 146, 151 (6th Cir. 1990). Moreover, the new evidence would not have resulted in a finding of disability under the Commissioner's Listing of Impairment (LOI) 11.03, because the seizures had not persisted despite treatment for at least three months. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Section 11.03.

The new evidence also fails on the issue of good cause. The plaintiff's representative did request a neurological evaluation at the hearing to determine if she met the Commissioner's Listing of Impairment (LOI) 11.03 for seizure disorders. (Tr. 83, 146). The ALJ initially stated that he would take the request under advisement, although he noted that it was the plaintiff's burden to produce evidence of impairment. (Id.). Likewise, the ALJ stated that he would take under advisement

06-458 Russell

the plaintiff's request for a psychological evaluation to evaluate her mental impairments, including her IQ. (Id.). However, at the end of the hearing, the ALJ stated that he would hold the record open for fifteen days for the submission of records from Dr. Polk before determining whether it would be of any use to order a consultative examination. (Tr. 185-6). The records were submitted five days later, on January 10, 2006. (Tr. 112). Although the plaintiff states in her brief that her referral to Dr. Patel took place "while waiting on the ALJ to decide if he was going to send Ms. Russell for the consultative examination as requested," Memorandum In Support of Plaintiff's Motion for Summary Judgment, Docket Entry No. 9, p. 6, it does not appear that any extension of the fifteen day period was requested. Nor does it appear that counsel for the plaintiff indicated at any point that she would be submitting additional evidence other than the records submitted on January 10.

The plaintiff suggests that it was the ALJ's responsibility to send the plaintiff for a consultative neurological examination as suggested by Dr. Mancuso and that the evidence from Dr. Patel shows that such an evaluation would have shown that she suffered from partial complex seizures. However, the Commissioner's regulations at 20 C.F.R. Section 416.919a, while permitting the purchase of consultative examinations in circumstances in which "the evidence considered as a whole, both medical and nonmedical, is not sufficient to support a decision," do not require the purchase of such examinations.

06-458  Russell

The plaintiff also points to Social Security Ruling 03-1p, concerning mental disorders in individuals with "postpolio sequelae."  Whatever else may be said about this ruling, it provides that disability must be shown by medical evidence consisting of symptoms, signs, and laboratory findings, and not on the basis of an individual's statement of symptoms alone.  The plaintiff did not present any evidence of treatment for polio, beyond her own statements, and it is also somewhat questionable whether she established what the Ruling describes as the most common residuals of acute polio infection: observable weakness, muscle atrophy, and reduced peripheral reflexes.  Dr. Mancuso's testing did not show atrophy or reflex deficits, and although his testing arguably showed left-sided weakness in terms of a reduced grip, he also described the results as "normal."  None of the notes from Monticello Medical Associates/Dr. Polk or from Dr. Patel show any physical deficits, either. The Ruling suggests that mental disorders can also have links to polio infections, including deficits in attention, cognition, or behavior, as pointed out by the plaintiff.  However, the plaintiff submitted no school records or other evidence suggesting limited cognitive functioning. The plaintiff's assertion that she meets LOI 12.05C must fail for lack of evidence.

Finally, the plaintiff argues that the VE's testimony establishes that an individual who has "multiple seizures per day" could not perform substantial gainful activity. (Tr. 184-5). The plaintiff failed to establish that she was having seizure

16

06-458 Russell

activity at this level, and even her own testimony and that of her witness is not persuasive on this point.

The decision will be affirmed.

This the 20th day of July, 2007.

Signed By:

*G. Wix Unthank*

**United States Senior Judge**